IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN A. BENNETT, M.D., et al.,    :
                                  :
        Plaintiffs,               :    CIVIL ACTION
                                  :
    v.                            :    No. 09-cv-1819
                                  :
ITOCHU INTERNATIONAL, INC., et al.,:
                                  :
        Defendants.                :

**MEMORANDUM and ORDER**

**Joyner, J.**                                                 **August 17, 2009**

Presently before the Court is Defendants' Motion to Transfer Venue to the United States District Court for the Southern District of New York (Doc. No. 6) and Plaintiffs' Response in Opposition thereto (Doc. No. 14) and Defendants' Reply (Doc. No. 16). For the reasons set forth below, the Court will deny the Motion.

**Background**

Plaintiffs, John A. Bennett, M.D. ("Bennett"), Devon Robotics, LLC, and Devon Health Services, Inc. ("DHS"), brought this Complaint against Defendants ITOCHU International, Inc. ("ITOCHU"), MedSurg Specialty Devices, Inc. ("MedSurg"), Thomas N. Apple ("Apple"), Mounir Rabbat ("Rabbat") and Yoshihisa Suzuki ("Suzuki"). Bennett is a Pennsylvania citizen and the Chief Executive Officer of Devon Robotics and Devon Health Services ("DHS"), both Pennsylvania corporations. Defendant ITOCHU is a Delaware Corporation with its principle place of

1

business in New York.  Defendant Thomas Apple, a New York citizen, acted as Vice President, Corporate Counsel and Senior Advisor to the general manager of human resources in the Legal Division of ITOCHU. MedSurg is a subsidiary of ITOCHU, organized under the laws of Delaware with its principle place of business in Louisiana.  Defendant Rabbat, a citizen of New York, acted as the Senior Vice President, COO, Enterprise Division, General Manager of Business Development Division of ITOCHU, and/or officer and Director of MedSurg. Defendant Suzuki, a New York citizen, acted as Chief Executive Officer and President of ITOCHU.

Prior to the Plaintiffs' filing of this action, Defendant ITOCHU initiated an action against Devon Robotics in the U.S. District Court for the Southern District of New York on April 10, 2009 ("New York" case).  The New York Complaint is based on the same negotiations and agreements underlying the instant case.  Additionally, a related case ("Pennsylvania" case) was filed in this court on February 13, 2009, between, *inter alia*, Health Robotics and ITOCHU in which parties dispute similar issues both to the New York case and instant case, i.e., negotiations, financing and agreements pertaining to CytoCare[1] and the IV Station.

We will lay out the claims and arguments in the instant case in order to align them with the New York and Pennsylvania cases. The Plaintiffs have alleged seven counts: Count I asserts a claim by

---

[1] The world's first and only automated robotic system for preparing chemotherapy medication.  <u>Health Robotics, LLC v. Bennett</u>, No. 09-0627, 2009 WL 1708067 (E.D. Pa. June 16, 2009).

Bennett for Defamation[2] against Apple and ITOCHU.  In Count II, Devon Robotics alleges a claim for Breach of Contract[3] against ITOCHU and MedSurg surrounding a Distribution Agreement.  In Counts III and IV, Devon Robotics, Bennett and Devon Health allege claims for Fraudulent or Negligent Misrepresentation against Rabbat, Suzuki and ITOCHU based on representations made to Bennett that ITOCHU would become a fifty percent partner and investor in Devon Robotics ("Partnership Transaction").[4]  In Count V, Bennett, Devon Robotics and Devon Health allege that Rabbat, Suzuki and ITOCHU breached their duty to negotiate in good faith surrounding the Partnership Transaction and the terms and assurances relating to the Distribution Agreement.  Bennett and Devon Health bring Count VI for Breach of Oral Contract against ITOCHU for statements made by Rabbat and Suzuki concerning ITOCHU's interest in purchasing shares in Devon Health from Bennett.  Finally, in Count VII, Bennett and Devon Robotics allege Breach of an Oral Contract or Promissory Estoppel against ITOCHU for an oral contract that ITOCHU allegedly entered concerning shares of CytoCare and the IV Station.

---

[2] The Defamation claim alleges that Apple fraudulently published false statements to third parties that Dr. Bennett was not and had never been an Executive Advisor to ITOCHU, causing damage to Dr. Bennett's reputation. (Compl. ¶¶ 85-90.)

[3] Devon Robotics alleges that ITOCHU and MedSurg breached their distribution agreement pertaining to the exclusive distribution of CytoCare in North America by failing to pay for agreed upon marketing expenses, failing to make reasonable or best efforts to meet sales objectives outlined in the Distribution Agreement.

[4] The Complaint alleges that as a result of these misrepresentations and omissions, Bennett and Devon Robotics entered into an agreement with Health Robotics, assuming all of the research and development expenses and the working capital expense with respect to the IV Station, and removed minimum purchase obligations from the MedSurg distribution agreement under the understanding that ITOCHU would proceed with the purchase of 50 percent shares of Devon Health for $27,500,000 and this transaction would close by year end of 2009.

The Defendants move for transfer of venue to the Southern District of New York based the "first-filed" rule or pursuant to 28 U.S.C. § 1404.

## Discussion

**1. "First-Filed" Rule**

Defendants first argue that pursuant to the first-filed rule, the instant case should be transferred to the Southern District of New York where Defendant ITOCHU has filed a Complaint against Plaintiff Devon Robotics.[5] Defendants posit that the Complaint warrants transfer under the first-filed rule because both the New York Complaint and the instant Complaint substantially overlap as to the parties and the negotiations and agreements in dispute. Plaintiffs argue that transfer is inappropriate under the guidelines of the first-filed rule because the instant action and the New York action are not truly duplicative proceedings and because the New York action resulted from a "race to the courthouse" and represents only "the tip of the iceberg of the legal dispute" that exists between the parties' business relationship. (Pl's Br. Opp. Mot. Transfer Venue, 4-5.) Finally, Plaintiffs contend that the Pennsylvania action[6] pending before this

---

[5] Defendant ITOCHU filed a lawsuit on April 10, 2009, against Devon Robotics, LLC in the U.S. District Court for the Southern District of New York.  May 1, 2009, ITOCHU amended its New York Complaint to add Devon Health Services ("DHS") and John A. Bennett, M.D.-the owner of Devon Robotics and DHS- as Defendants.  See First Amended Complaint, ITOCHU Int'l Inc. v. Devon Robotics, LLC, No. 03705 (S.D.N.Y. filed May 1, 2009)("Amended Complaint").
[6]  Currently pending before this Court is Health Robotics, LLC v. Bennett, No.09-627, which was filed on February 13, 2009, and subsequently amended to add ITOCHU as a Defendant on April 14, 2009.  The Complaint brings claims related to negotiations involving the robot CytoCare for Breach of Fiduciary Duty and Tortious Interference with Actual and Prospective Contractual Relations against, *inter alia*, Bennett, ITOCHU and Devon Robotics.

4

Court is actually the first-filed Complaint, making transfer of the instant case to New York more costly and inefficient.

Under the "first-filed rule," in cases where federal concurrent jurisdiction exists, the court which first has possession of the subject must decide it. IMS Health, Inc. v. Vality Tech., Inc., 59 F.Supp.2d 454, 463 (E.D. Pa. 1999). The "first-filed rule" encourages sound judicial administration and promotes comity among federal courts of equal rank. E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). It gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court. Id.; Saudi v. Acomarit Maritimes Services, S.A., 245 F.Supp.2d 662, 666-67 n. 3 (E.D. Pa. 2003); Wise Investments, Inc. v. Bracy Contracting, Inc., No. 01-3458, 2001 U.S. Dist. LEXIS 24052, at *4-5 (E.D. Pa. Nov. 1, 2001).

The Court finds that transfer under the first-filed rule is inapplicable in this case due to the timeline of actions relating to CytoCare.  The Pennsylvania action was filed February 13, 2009 and amended April 14, 2009, to include ITOCHU as a defendant.  The New York Action was filed later, on April 10, 2009.  Thus, the Pennsylvania action is the first-filed case relating to the contracts and agreements surrounding CytoCare and as such, Defendants' reliance on the first-filed rule is no longer applicable to the resolution of venue in this case.  See Villari Brandes & Kline v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *6 (E.D.

Pa. June 26, 2009)(citing Shire U.S., Inc. v. Johnson Mattney, Inc., 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)(finding the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align; rather the rule should apply where the subject matter of the later filed case substantially overlaps with that of the earlier one).

**2. Transfer Under 28 U.S.C. § 1404(A)**

Defendants next argue that transfer is appropriate due to the convenience of the parties and witnesses.  Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district court where the action might have originally been brought "[f]or the convenience of the parties and witnesses, [or] in the interest of justice."  Analysis of any motion to transfer venue must begin with acknowledgment of the well-settled principles that a plaintiff's choice of forum is not to be lightly disturbed and that the burden of establishing the need for transfer rests with the movant. Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3d Cir. 1995); Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

Once it has been established that another forum would be proper, the defendant bears the burden of showing that, on the balance of identified public and private factors, considerations weigh "strongly" in favor of transfer. Gulf Oil v. Gilbert, 55 U.S. 501, 508, 67 S. Ct. 839, 843 (1947). The "private" factors set out by Gulf Oil, further articulated in Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995), include,

> [T]he plaintiff's forum preference; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that witnesses may actually be unavailable for trial in one of the fora, and the locations of books and records.

Named public factors include,

> Enforceability of judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two for a resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of trial judges with the state law for diversity cases. Id.

Within this framework, courts have given great deference to the plaintiff's choice of forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S. Ct. 252 (1981); Kielczynski v. Consolidated Rail Corp., 837 F. Supp. 687, 689 (E.D. Pa. 1993).

As to the "private factors," the Plaintiffs, Pennsylvania residents, have clearly chosen the Eastern District of Pennsylvania as their preferred forum. See Pls. Opp. Br. at 16. The Defendant, however, would prefer to litigate in the Southern District of New York. See Defs. Br. at 5.

Defendants argue that Plaintiffs' forum is not entitled to deference given that the Plaintiffs had previously consented to litigate in New York in a forum selection clause included in one of the agreements in dispute. See Defs' Mot. Transfer Venue, Exh. D and F. Plaintiffs concede that New York would be an appropriate venue; however, they contend that Pennsylvania is proper because the forum selection clauses in the Distribution Agreement, among other

7

agreements, stipulated that both Pennsylvania and New York were appropriate venues for disputes arising out of such agreements. Furthermore, Plaintiffs submit that in the Distribution Agreement, a forum selection clause between MedSurg and Devon Robotics provides that litigation may only be brought to the Eastern District of Pennsylvania or the Montgomery Court of Common Pleas.  Given that potentially multiple forum selection clauses provide Pennsylvania as a proper venue and Plaintiffs are Pennsylvania citizens, Plaintiffs' choice to litigate in the Eastern District of Pennsylvania is entitled to deference.

As to the location of the claims, the events giving rise to the claims include a series on negotiations and agreements which occurred in both Pennsylvania and New York.  Transactions giving rise to the claim of breach of duty to negotiate in good faith occurred in the Plaintiffs' office in King of Prussia, Pennsylvania. See Comp., ¶31.

In regards to the convenience of the Parties, Defendants posit that the ITOCHU employees named as Defendants in this action have never consented to litigate outside of New York, whereas Plaintiffs are already involved in litigation in New York.  As the Plaintiffs note in their opposing brief, however, "Defendants have not offered any evidence to suggest that the individual Defendants . . . lack the funds or availability to travel the relatively short distance between New York City and Philadelphia."  Pls' Br. at 18.  Defendants have not carried their burden in this regard because they have not shown or even alleged that parties or witnesses would be "unavailable" if

litigation were to ensue in Philadelphia.   Jumara, 55 F.3d at 879.

Finally, the location of books and records is not a significant factor in this case.  Any books or records located outside of this district that would be needed at trial could easily and inexpensively be transported to this district either electronically or physically.  Given the Plaintiffs' forum choice, the location of the events giving rise to the Complaint, and the relative convenience for the parties and witnesses, private factors weigh against transfer.

The "public factors" also weigh in favor of the Plaintiff. First, the Eastern District of Pennsylvania will not have difficulty enforcing any judgment obtained by the parties.  Second, practical considerations that could make the trial easier weigh in favor of Philadelphia given that a substantively similar action is underway in this Court. See Health Robotics, LLC v. Bennett, No. 09-627, 2009 WL 1708067 (E.D. Pa. June 16, 2009).  Third, Defendants do not suggest that the New York court is any less congested such that transfer would promote administrative ease.  As to the fourth factor, Defendants do claim that New York has a strong local interest in adjudicating the dispute because of the business transactions which transpired in New York, the prominence of ITOCHU as an employer to the New York community and the Defendants' New York residence.  Plaintiffs', however, contend that Pennsylvania also has a strong interest in resolving this matter. We find that the local interest New York may have in adjudicating the dispute are in equipoise to Pennsylvania's interest in providing a resolution to Plaintiffs who are also

residents and employers in Pennsylvania.  Finally, although the parties disagree as to the public policy implications of the fora and familiarity of the fora with the applicable law, in light of the fact that the majority of the contracts at issue have selected both New York and Pennsylvania as adequate forums, this Court can find no reason to hold that public policy weighs in favor of either district.

As, on balance, Defendant has not met their heavy burden, Defendants' Motion to Transfer Venue to the Southern District of New York is DENIED.  An appropriate order follows.