IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ITOCHU INTERNATIONAL, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 09-cv-1819 |
| DEVON ROBOTICS, LLC, ET. AL., | : | CONSOLIDATED WITH |
| Defendants. | : | NO. 09-cv-4123 |

## MEMORANDUM

Before the Court are ITOCHU INTERNATIONAL INC. and Medsurg Specialty Devices, Inc.'s Motion for Order Determining Ownership of Dr. John A. Bennett's Eight Vehicles (Case No. 9-4123, Doc. No. 251), Dr. John Bennett's Response in Opposition Thereto (Doc. No. 254), and ITOCHU INTERNATIONAL INC. and Medsurg Specialty Devices, Inc.'s Reply in Further Support Thereof (Doc. No. 255). For the following reasons, it is hereby ORDERED that the Motion is GRANTED in part.

I.  BACKGROUND

The facts of this case are known to the Court and the parties, and the Court will recount only those facts pertinent to this motion. The Court entered final judgment in favor of ITOCHU INTERNATIONAL INC. ("Itochu") and Medsurg Specialty Devices, Inc. ("Medsurg") on October 4, 2013, in the total amount of $14,357,631.04. (Case No. 9-4123, Doc. No. 104). Since that time,

judgment debtors Dr. John Bennett and his two companies, Devon Robotics and Devon Health Services ("judgment debtors"), have not paid any amount of the judgment. The present motion, then, represents a part of ITOCHU's continued efforts to enforce its judgment.

In October 2013, ITOCHU filed praecipes for writs of execution against, in relevant part, Dr. Bennett's estate in Villanova, Pennsylvania, and writs of garnishment against 37 companies ITOCHU believed to be owned by Dr. Bennett. (Doc. Nos. 107, 108). The Court issued the writs. The Court later ordered judgment debtors to provide an inventory of their assets to aid ITOCHU in executing its judgment (Doc. No. 193, modified by Doc. No. 198) and required Dr. Bennett to arrange for ITOCHU's counsel and representatives to inspect his home at 1835 County Line Road in Villanova to identify personal property subject to levy. (Doc. No. 198).

The inventory was conducted on January 16, 2014. ITOCHU submitted the inventory to the marshal, who levied on all the personal property listed. ITOCHU's counsel then informed Dr. Bennett's counsel that ITOCHU intended to direct the marshal to take possession of seven vehicles listed on the inventory. In response, Dr. Bennett filed an emergency motion to stay execution, asserting that the seven vehicles were owned jointly by him and his wife as tenants by the entirety, and thus not

subject to execution. (Doc. No. 227). After a telephone conference with counsel for the parties, the parties agreed that Dr. Bennett would execute a bond for the vehicles. Subsequently, Dr. Bennett executed a bond for six of the seven vehicles. (ITOCHU's Motion, Ex. H). ITOCHU accepted this bond.

ITOCHU now seeks a ruling determining the ownership of eight vehicles owned by Dr. Bennett. The eight vehicles include the six for which Dr. Bennett has posted a bond, an eighth car in the possession of a Mr. Alphonso ("Al") Perna in Florida,[1] and a 2012 Audi A8. The makes and models of these cars, as well as their status in relation to this litigation, are as follows:

- 2005 Jeep Grand Cherokee - bond posted
- 2005 Ford F150 - bond posted
- 2007 Ford F150 - bond posted
- 2007 Mercedes Benz SL 550 - bond posted
- 2007 BMW 750Li - bond posted
- 2007 Cadillac Escalade - bond posted
- 2012 Audi A8 - no bond posted
- 2006 Cadillac Escalade - in possession of Al Perna in Florida

## II. ENTIRETIES PROPERTY UNDER PENNSYLVANIA LAW

ITOCHU argues that the titles to the vehicles at issue

---

[1] Al Perna is employed by Devon Office Furniture. (Dr. Bennett's Response, Ex. B at 20).

certify that they are owned exclusively by Dr. Bennett. Because the titles to the cars name only Dr. Bennett, ITOCHU asserts, they are his sole property and are subject to execution. Dr. Bennett counters that other factors, not the title of the vehicles, should guide the Court's analysis. Dr. Bennett points to the fact that the vehicles were acquired during the marriage of Nance DiRocco and Dr. Bennett, were purchased with funds from two joint bank accounts owned by the couple, and are insured jointly. Moreover, the vehicles were intended to be and are used jointly by Ms. DiRocco, Dr. Bennett, and their children. Dr. Bennett asserts that the vehicles are not subject to execution because they are owned by Ms. DiRocco and Dr. Bennett as tenants by the entirety.

Under Pennsylvania law, marital property that is held by spouses as tenants by the entirety is not subject to the debtor-spouse's creditors. Livingston v. Unis, 659 A.2d 606, 611 (Pa. Commw. Ct. 1995); see also In re Brannon, 476 F.3d 170, 173 (3d Cir. 2007). A well-noted exception to this rule, however, is if there is evidence establishing fraud in the conveyance of individual property of a spouse to both spouses as tenants by the entirety. Garden City Shopping Center, Inc. v. Super General Stores, 29 Pa. D. & C.3d 319, 332-34 (Ct. Comm. Pl. 1982). If fraud is proven, the entireties property is subject to execution. Id.

4

Tenancy by the entirety is a form of ownership under Pennsylvania law in which each spouse has an undivided interest in the possession and enjoyment of the whole property and all of the rights arising from the possession. Clingerman v. Sadowski, 519 A.2d 378, 380-81 (Pa. 1986). This type of ownership is applicable to personal as well as real property. Pichler v. Unite, 457 F.Supp.2d 524, 528 n.3 (E.D. Pa. 2006), *rev'd in part on other grounds*, 541 F.3d 380 (3d Cir. 2008); In re Denillo, 309 B.R. 866, 871 (Bankr. W.D. Pa. 2004).[2] In order for a tenancy by the entirety to arise, husband and wife must take identical interests in a property. In re Brannon, 476 F.3d at 173. The "four unities" of time, title, interest, and possession, as well as marriage, must exist simultaneously for the tenancy to be created. U.S. v. Strube, 58 F.Supp.2d 576, 584 (M.D. Pa. 1999)(citing U.S. v. Klimek, 952 F.Supp. 1100, 1115 (E.D. Pa. 1997)); see also In re Cosper, 106 B.R. 377, 380 (Bankr. M. D. Pa. 1989); Hill v. Department of Corrections, 64 A.3d 1159, 1165 (Commw. Ct. 2013)(holding that entireties estate was not created in inmate bank account because petitioners did not obtain title by the same instrument). Property conveyed to a husband and wife

---

[2] Dr. Bennett contends that Bankruptcy Court cases are inapplicable to the issues to be considered in the present matter. However, bankruptcy courts often consider Pennsylvania property law issues that are directly on point here. See, e.g., In re Brannon, 476 F.3d at 173 ("[b]efore addressing the bankruptcy issues presented in this case, it will be helpful to have a brief sketch of relevant tenancy by the entireties principles.")

is presumed to be held as tenants by the entirety. Shapiro v. Shapiro, 224 A.2d 164, 173 (Pa. 1966); In re Holmes' Estate, 200 A.2d 745, 747 (Pa. 1964).

"[U]nity of title exists when the married couple obtain title by and through the same instrument." In re DelCorso, 382 B.R. 240, 252 (Bankr. E.D. Pa. 2007). In order to create unity of title, "[t]he instrument by which the [property] was originally acquired must have been in the names of both husband and wife." Id. at 254; Hill, 64 A.3d at 1165. In contrast, "[w]hen property is titled in only one spouse . . . such property cannot be presumed to be held by a married couple as tenants by the entirety." Id. at 253; see also In re Roberts, 81 B.R. 354, 364 (Bankr. E.D. Pa. 1987)(finding that any property titled individually to one spouse "is not entireties property.")

### III. OWNERSHIP OF THE EIGHT VEHICLES

In the case at hand, ITOCHU has provided the Court with the title instruments to seven of the eight vehicles at issue. See (ITOCHU's Motion, Exs. A-F, J). Each of these Certificates of Title, issued by the Commonwealth of Pennsylvania, lists the registered owner as either "John Bennett" or "John A. Bennett". See id. Dr. Bennett does not contest that these vehicles are titled in his name only. Though he argues that the vehicles are insured and used jointly, this "unity of possession" alone is insufficient for a determination that the vehicles constitute

entireties property. In Re DelCorso, 382 B.R. at 252-53.

Because Dr. Bennett took sole title of the vehicles when acquiring them, he and Ms. DiRocco did not have unity of title. Without unity of title at the time of acquisition, the vehicles were not acquired and are not held by Ms. DiRocco and Dr. Bennett as tenants by the entirety. The Court finds that ITOCHU has sustained its burden of rebutting the presumption that the vehicles at issue are entireties property. The vehicles are subject to execution by ITOCHU and Medsurg in satisfaction of their judgment against Dr. Bennett.

Dr. Bennett has posted a bond for six of the vehicles at issue. ITOCHU may now collect on the bond posted for them.

Dr. Bennett did not post a bond for the 2012 Audi A8. ITOCHU explains that Dr. Bennett relayed to ITOCHU that the Audi is subject to a financing lien that may take precedence over ITOCHU's judgment lien. (ITOCHU's Motion at 8); see also (Doc. No. 227 at 4). However, the Court agrees with ITOCHU that possession by a U.S. marshal would not preclude the financing company from asserting its claim. While the Court does not have before it the title instrument to the vehicle,[3] Dr. Bennett has asserted in previous filings that the vehicle is titled solely in his name. See (Doc. No. 227 at 4). Moreover, ITOCHU has submitted

---

[3] ITOCHU notes that Dr. Bennett did not produce the title to this vehicle, despite his production of other titles. (ITOCHU's Motion at 3 n.2).

7

the Pennsylvania Financial Responsibility Identification Card for the Audi, which names only John A. Bennett. (ITOCHU's Motion, Ex. G). The Court finds this evidence, especially Dr. Bennett's previous filing, to be sufficient to conclude that the 2012 Audi is his sole property and is subject to execution.

As to the 2006 Cadillac Escalade currently in the possession of Alphonso Perna in Florida, Dr. Bennett maintains that it was purchased by Mr. Perna in 2012 and has been in his control since that time. (Dr. Bennett's Response at 4). Dr. Bennett has submitted emails and an Accounts Payable Invoice History Report from Devon Office Furniture detailing the structure of the payments made regarding the vehicle. Id. Ex. B. One email from Francis Lutz, the CFO of Devon International Group, instructs Peggy Higgins, a Devon Office Furniture employee, to create a loan from Devon Office Furniture to Al Perna for $15,000, and another loan from Dr. Bennett to Devon Office Furniture for the same amount. Id. at 25.[4] Mr. Lutz indicates that Mr. Perna will have the payments for the Escalade deducted from his salary from Devon Offices Furniture, in bi-monthly deductions of $1,500 each. Id. In another email, Al Perna agrees to this arrangement. Id. at 26.

Mr. Lutz explains that, after receiving the second $1,500 deduction from Mr. Perna's paycheck each month, Devon Office

---

[4] The page numbers for Exhibit B refer to the ECF page numbering.

8

Furniture will make a loan payment of $3,000 to Dr. John A. Bennett. Id. at 25. In this way, Mr. Perna will pay the $15,000 to Dr. Bennett in five monthly installments of $3,000 (comprised of 10 bi-monthly salary deductions of $1,500), with the money passing through and documented on the invoices of Devon Offices Furniture.

Dr. Bennett and Mr. Perna agreed that title to the vehicle would be transferred after all payments had been made. Id. at 13. As of September 4, 2012, two payments were still outstanding - those for September and October 2012. Id. at 10. In the most recent email provided to the Court, which was written in September 2012, Mr. Perna writes to Kimberly Ní Brádaigh, the Devon International Group Vice President of Operations, that he is "within a few months of ownership . . . I need to allow my daughters use of the car and haven't cause its in Johns name. what do you think?" Id. at 8.

ITOCHU points out that Dr. Bennett has not provided documentation of transfer of title from himself to Mr. Perna. Indeed, although it appears to the Court that by September 2012 Dr. Bennett had received five $3,000 monthly checks for a total of $15,000 from Devon Offices Furniture, see id. at 5, and it appears that Devon Offices Furniture may have made the ten salary deductions necessary to complete payment, see id. at 3-4, 6, the emails between Ms. Brádaigh and Mr. Perna assert that title had

9

not yet passed to Mr. Perna, and would not do so until October 2012 at the earliest. Id. at 8. Additionally, in his November 22, 2012 inventory submitted to ITOCHU, Dr. Bennett listed the Escalade as "purchased by Al Perna in Spring 2012 but title not yet transferred." (ITOCHU's Motion, Ex. I at 3).

The Court declines to determine the ownership of the 2006 Cadillac Escalade at the present time. Because the parties focused only a minority of their briefing of this Motion on the ownership of the Escalade, the Court will give the parties time to supplement their arguments and evidence as to this vehicle.

## CONCLUSION

For the foregoing reasons, ITOCHU and Medsurg's Motion to Determine Ownership of Dr. John A. Bennett's Eight Vehicles is GRANTED in part. An Order follows.